IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: ENERGY FUTURE HOLDINGS CORP., *et al.*, <br><br> Debtors. | |
| COMPUTERSHARE TRUST COMPANY, N.A. and COMPUTERSHARE TRUST COMPANY OF CANADA as INDENTURE TRUSTEE, <br><br> Appellants, <br><br> v. <br><br> ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC and EFIH FINANCE INC., <br><br> Appellees. | Civil Action No. 15-1011-RGA <br><br> Civil Action No. 15-1014-RGA <br><br> Civil Action No. 15-1015-RGA |

MEMORANDUM ORDER

Pursuant to 28 U.S.C. § 158(a), Appellants Computershare Trust Company, N.A. and Computershare Trust Company of Canada (collectively "Trustee") appeal from an order of the United States Bankruptcy Court for the District of Delaware. (D.I. 1-2).[1] The appeal is fully briefed. (D.I. 13, 19, 22).[2] Trustee raises four issues on appeal. (D.I. 13 at pp. 4–5). Trustee is the indenture trustee for the Noteholders of a series of Second Lien Notes issued by Appellees ("EFIH"), pursuant to an Indenture dated April 25, 2011 and a First Supplemental Indenture dated February 6, 2012. (*Id.* at pp. 1, 6). In the related appeal of the First Lien Noteholders, this Court held oral argument on February 9, 2016. (C.A. No. 15-620-RGA, D.I. 56). Trustee

---

[1] Unless otherwise specifically noted, all references to the docket refer to Civil Action No. 15-1011-RGA.
[2] Appellants waived oral argument. (D.I. 24).

1

participated in this appeal as an intervenor, as there is substantial overlap between the arguments of the First Lien Noteholders and the Second Lien Noteholders. (C.A. No. 15-620-RGA, D.I. 45, D.I. 56 at 39–46). At the conclusion of oral argument, the Court ruled on the record in favor of EFIH as to two of the three issues raised by the First Lien Noteholders. (C.A. No. 15-620-RGA, D.I. 56 at 117–20). The Court took a third issue raised by the First Lien Noteholders under advisement, and subsequently issued a Memorandum Order ruling in favor of EFIH and affirming the orders of the Bankruptcy Court in full. (C.A. No. 15-620-RGA, D.I. 57).

In assessing the Second Lien Noteholders' summary judgment arguments, the Bankruptcy Court noted that "the relevant provisions of the Second Lien Indenture and the First Lien Indenture are substantially identical" and "therefore incorporate[d] its prior interpretation of the First Lien Indenture to the Second Lien Indenture . . . except as to § 6.02 of the Indenture, in which the Second Lien Trustee [] identified a textual difference . . . ." (D.I. 1-1 at 5–6). In its Memorandum Opinion, the Bankruptcy Court then considered Trustee's claim that additional language in the Second Lien Indenture mandated a different result than the First Lien Indenture, and ultimately held that the additional language did not change the result. (*Id.* at 8–18). The Bankruptcy Court concluded by granting summary judgment in favor of EFIH on several counts, and denying the Second Lien Trustee's motion for summary judgment in its entirety. (*Id.* at 18).

Because all but one of the arguments raised by Trustee in the present appeal are admittedly identical to those raised by the First Lien Noteholders,[3] I also incorporate and apply my rulings in the First Lien Noteholders' appeal to the present action. First, Trustee argues that the Bankruptcy Court erred in its interpretation of the Indenture under New York law by holding

---

[3] Trustee concedes that most of its arguments assert "grounds equally applicable to the First Lien Noteholders." (D.I. 13 at p. 14). At oral argument in the First Lien Noteholders' appeal, counsel for Trustee, participating as an Intervenor, conceded that "the legal issues that are presented in these two cases are 95 percent overlapping." (C.A. No. 15-620-RGA, D.I. 56 at 40).

2

that EFIH was not required to pay the Second Lien Noteholders the make-whole premium, because EFIH's repayment of the notes after acceleration in bankruptcy should have been considered an Optional Redemption under the Indenture. (D.I. 13 at pp. 14–27). Second, Trustee argues that the Bankruptcy Court erred in holding that the automatic stay prevented Trustee from exercising its contractual right to rescind acceleration or to seek damages for breach of that right within the Bankruptcy proceeding. (*Id.* at pp. 27–30). Third, Trustee argues that the Bankruptcy Court abused its discretion by failing to lift the automatic stay *nunc pro tunc* to allow Trustee's earlier notice of rescission to take effect. (*Id.* at pp. 30–35).

At oral argument in the First Lien Noteholders' appeal, I ruled in favor of EFIH as to the first and third issues raised by Trustee here. (C.A. No. 15-620-RGA, D.I. 56 at 118–20). Specifically, I agreed with the Bankruptcy Court's conclusion that, under New York law, EFIH's repayment of the Notes after acceleration was not a voluntary redemption under the Indenture and that the Indenture did not otherwise expressly provide for the payment of a make-whole in the event of an automatic acceleration. (*Id.* at 118). I also concluded that the Bankruptcy Court did not abuse its discretion in declining to lift the stay. (*Id.* at 118–19). Shortly after oral argument, I issued a written decision ruling in favor of EFIH as to the second argument raised by Trustee here, concluding that "the Bankruptcy Court did not err by holding that the Noteholders' contractual right to rescission was subject to the automatic stay and did not otherwise provide grounds for a damages claim." (C.A. No. 15-620-RGA, D.I. 57 at 3). Having reviewed the parties' briefs in the present appeal, which raise arguments that are nearly identical to those I considered in the First Lien Noteholders' related appeal, I am not persuaded to depart from my

3

previous rulings. Accordingly, I conclude that Trustee's first three arguments do not provide grounds for relief in the present appeal.[4]

Trustee's fourth argument is unique to the Second Lien Noteholders. Specifically, Trustee argues that "the Second Lien Indenture contains additional explicit language, not included in the First Lien Indenture, contemplating that a premium may remain available following acceleration in bankruptcy." (D.I. 13 at p. 35; *see also id.* at pp. 35–40). Indeed, Section 6.02 of the Second Lien Indenture, concerning acceleration, contains two additional phrases not appearing in the First Lien Indenture, italicized below:

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of *and premium, if any,* interest (including Additional Interest, if any) *and any other monetary obligations* on the outstanding Notes shall be due and payable immediately without further action or notice.

(D.I. 14 at A262 (emphasis added)). Trustee argues that, "The inclusion of both distinguishing phrases demonstrates the intention to preserve the right to a make-whole premium following a bankruptcy-caused acceleration." (D.I. 13 at pp. 35–36). Specifically, Trustee argues that, "'any other monetary obligations,' on its face, is clearly a classic catch-all provision, sweeping within its meaning any other category of obligation that might be due under the Notes." (*Id.* at p. 36). Thus, according to Trustee, "the additional phrase 'premium, if any' must refer to something more specific—logically, the availability of a make-whole premium depending on the circumstances." (*Id.*). Trustee argues that there are only two sorts of premiums under the Indenture that this language could be referring to: the "Applicable Premium" (*i.e.*, the make-whole amount) under § 3.07(a) of the Indenture or the fixed premiums due after the specified call

---

[4] With regard to Trustee's first argument, my previous rulings apply only to Trustee's general arguments about principles of contract interpretation under New York law (D.I. 13 at pp. 14–27), or, in other words, the issues that apply equally to the First Lien Noteholders and Second Lien Noteholders. I address Trustee's argument based upon different language in the Second Lien Indenture in further detail below.

4

dates under § 3.07(d). (*Id.* at pp. 36–37). Thus, Trustee contends that this additional language in the Second Lien Indenture mandates a different result because it "confirms the parties' intention to keep open the possibility of a make-whole premium following bankruptcy, even if that might not be available under the First Lien Indenture." (*Id.* at p. 39).

EFIH argues that the additional generic phrase, "premium, if any," does not provide the specificity required under New York law to make clear the parties' intent for the make-whole amount to be paid even in the case of an acceleration in bankruptcy. (D.I. 19 at pp. 26–27). The Bankruptcy Court agreed, holding that "the Second Lien Indenture's acceleration clause is unambiguous, insufficient and lacking in explicitness regarding whether a make-whole premium is due upon an event of default. Thus, after acceleration, the Second Lien Trustee does not have a valid claim for the Applicable Premium." (D.I. 1-1 at 18). In doing so, it relied on the Bankruptcy Court for the Southern District of New York's decision in *Momentive*, which considered similar arguments regarding nearly identical contract language and concluded that, under New York law, the Indenture lacked the requisite explicitness to find that a make-whole was owed after a bankruptcy-induced acceleration. (*Id.* at 12–18 (citing *In re MPM Silicones, LLC*, 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014))).

I do not think that the Bankruptcy Court erred in concluding that this additional language does not provide the specificity required by New York law in order for payment of the make-whole to be required in the event of a bankruptcy-related acceleration. Indeed, the legal basis for the Bankruptcy Court's interpretation of the First Lien Indenture applies equally to the Second Lien Indenture: "Under New York law, an indenture must contain express language requiring payment of a prepayment premium upon acceleration; otherwise, it is not owed." (C.A. 15-620-RGA, D.I. 1-4 at 18). I previously affirmed the Bankruptcy Court's interpretation of New York

5

law regarding the level of specificity required to allow a contractual claim for a make-whole to be pursued after automatic acceleration, and I remain convinced that its interpretation was correct. *See, e.g., Nw. Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 836 (N.Y. Sup. Ct. 2006) ("A prepayment premium will not be enforced under default circumstances in the absence of a clause which so states."); *In re South Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011) ("As a general rule, a lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it. This is because prepayment provisions generally address the consideration to be paid when the borrower voluntarily prepays the debt, but after a default the borrower's repayment is neither voluntary nor in the nature of a prepayment." (citation omitted)). Against this legal backdrop, the parties could have negotiated for language in the Indenture that expressly requires a make-whole amount to be paid in the event of an acceleration, but they did not. *See, e.g., South Side House*, 451 B.R. at 269 ("But the parties may agree that even after default and acceleration, or where the borrower's prepayment is otherwise involuntary, an amount that is equivalent to prepayment consideration may nevertheless be due."); *In re Solutia, Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007) ("It is possible to provide contractually for post-acceleration 'yield maintenance' of some sort. . . . [E]xplicitness . . . [is] expected in a typical post-acceleration yield maintenance clause."). As the Bankruptcy Court noted, "The Indenture here was negotiated at arm's length between sophisticated parties who were represented by counsel." (C.A. No. 15-620-RGA, D.I. 1-4 at 19). Accordingly, it rightly declined to read provisions into this agreement that were not bargained for and do not appear in the Indenture.

The Bankruptcy Court's opinion is also supported by the decisions in *Momentive*—at both the Bankruptcy Court and District Court levels—which considered similar additional

6

language in an Indenture and found it insufficient to entitle the lender to a make-whole after a bankruptcy-related acceleration. The language of the Indenture at issue in *Momentive* read:

> If an Event of Default specified in Section 6.01(f) or (g) with respect to MPM [which includes the debtors' bankruptcy] occurs, the principal of, *premium, if any*, and interest on all the Notes shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holders.

*In re MPM Silicones, LLC*, 2014 WL 4436335, at *13 (Bankr. S.D.N.Y. Sept. 9, 2014) (alteration in original) (emphasis added). The Bankruptcy Court in *Momentive* observed that this language, "premium, if any," failed to "clearly and specifically provide[] for payment of a make-whole" in the event of an acceleration, as required under New York law. *Id.* at *14. Therefore, the *Momentive* Court held that the Indenture did "not create a claim for [the] Applicable Premium following the automatic acceleration of the debt pursuant to Section 6.02 of the indentures." *Id.* The District Court in *Momentive* affirmed, holding that the language, "premium, if any," in the acceleration clause, "does not clearly and unambiguously call for the payment of the make-whole premium in the event of an acceleration of debt." *In re MPM Silicones, LLC*, 531 B.R. 321, 336 (S.D.N.Y. 2015); *see also Solutia*, 379 B.R. at 478, 488 ("None of these clauses [including, 'premium, if any'] have the explicitness that would be expected in a typical post-acceleration yield maintenance clause."). Thus, as it is amply supported by precedent, I agree with the Bankruptcy Court's conclusion here that the language, "premium, if any," lacks the requisite explicitness under New York law to require EFIH to pay a make-whole after the debt was automatically accelerated following EFIH's bankruptcy filing.

The language in the Indenture here only differs from the language at issue in *Momentive* in its inclusion of the catch-all phrase: "and any other monetary obligations." I am unconvinced by Trustee's argument that this additional language changes the result. Trustee argues that

7

"premium, if any," when read in conjunction with this additional catch-all phrase, "must refer to something more specific—logically, the availability of a make-whole premium depending on the circumstances." (D.I. 13 at p. 36). In effect, Trustee argues that because this paragraph of § 6.02 contains one catch-all phrase, it definitively cannot include another, and therefore "premium, if any" must be read to mean something more specific than merely another catch-all phrase, in order to avoid redundancy. The phrase, "premium, if any," is stated broadly and, as the Bankruptcy Court correctly noted, also contemplates the possibility that no premium would be due upon default and acceleration. (D.I. 1-1 at 14). Even with the additional catch-all language, "and any other monetary obligations," the meaning of "premium, if any" remains ambiguous at best. What is not ambiguous, however, is that Section 6.02 of the Second Lien Indenture does not demonstrate an explicit intent to require the payment of a make-whole in the event that the debt is accelerated.

If, under New York law, the parties negotiating the terms of the Indenture wanted "premium, if any," to mean the "Applicable Premium" (the make-whole), they could have simply used the term "Applicable Premium." Moreover, other examples of contractual provisions that meet this specificity requirement for the payment of a make-whole after acceleration are available in case law. *See, e.g., Nw. Mut.*, 816 N.Y.S.2d at 837–40 (analyzing various clauses from other cases that make clear that "[t]he premium or its equivalent becomes due upon default and acceleration, or may become due upon exercise of an option."). These sophisticated parties, represented by counsel, chose the language "premium, if any" and I decline to re-write their agreement to fit the explicitness requirement of New York law.[5] The Second

---

[5] Both parties briefly argue that extrinsic evidence concerning the negotiations surrounding an Indenture that provided the template for the Second Lien Indenture proves the understanding of the contracting parties with regard to the viability of make-whole claims following acceleration. (D.I. 13 at pp. 38–39; D.I. 19 at pp. 40–43). However, the Bankruptcy Court deemed the Second Lien Indenture unambiguous and found it unnecessary to look outside the

8

Lien Noteholders agreed to this language, in lieu of a more specific provision, and must live with the consequences of the contract that was signed. Accordingly, I conclude that the Bankruptcy Court did not err by holding that the inclusion of the catch-all phrase, "and any other monetary obligations," does not render the Indenture sufficiently explicit to mandate payment of the Applicable Premium after the bankruptcy-caused acceleration in this case.

For the reasons stated herein, the orders of the Bankruptcy Court are **AFFIRMED**.

It is SO ORDERED this 11 day of April, 2016.

                                                                                               */s/ Richard G. Andrews*
                                                                                              United States District Judge

---

four corners of the document. (D.I. 1-1 at 7). I do not think the Bankruptcy Court did so in error. In any event, Trustee's argument amounts to no more than a vague assertion that the additional language was included as a result of negotiations and therefore demonstrates that the lenders bargained for this language for a reason. (D.I. 13 at pp. 38–39). This broad assertion does nothing to establish what the parties understood the inclusion of the language to mean or to otherwise show that the language of the Second Lien Indenture expressly requires payment of a make-whole upon acceleration.

9